UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

YUSNIEL ROSALES CARMENATE,

        Petitioner,                     Case No. 1:26-cv-1790

v.                                 Hon. Hala Y. Jarbou

KEVIN RAYCRAFT et al.,

        Respondents.
_____/

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee previously detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] (Pet., ECF No. 1.) For the following reasons, the Court will deny Petitioner's petition without prejudice.

## Discussion

### I.    Procedural History

Petitioner's suit asks the Court to issue a writ of habeas corpus ordering Respondents to release Petitioner or provide him with a bond hearing in which the government bears the burden of proving by clear and convincing evidence that he is a flight risk or danger to the community. (Emergency Pet., ECF No. 1-1, PageID.20.)

---

[1] Since filing this petition for a writ of habeas corpus, the Department of Homeland Security (DHS) transferred Petitioner to the Jackson Parish Correctional Center. *See* Online Detainee Locator System, https://locator.ice.gov/odls/#/search ("A-Number," enter "087515522," "Country of Birth," enter "Cuba," select "Search by A-Number") (last visited July 7, 2026).

In an order entered on June 10, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 5.) Respondents filed their response on June 15, 2026. (ECF No. 6.) Petitioner filed his reply on June 18, 2026. (ECF No. 7.)

## II.    Relevant Factual Background

Petitioner is a native and citizen of Cuba. (2009 Notice to Appear (NTA), ECF No. 6-2, PageID.312.) On May 30, 2009, Petitioner entered the United States at a port of entry in Laredo, Texas. (*Id*.) Petitioner was issued an NTA and was paroled into the United States "pending removal proceedings." (*Id*.) After Petitioner failed to appear for his removal hearing, an immigration judge (IJ) issued an order of removal *in absentia* on April 30, 2013. (Memo. & Order, ECF No. 6-3, PageID.314–315.)

In June 2018, officers with the Albion Police Department arrested Petitioner on a warrant for assault and battery. (2018 I-213, ECF No.6-4, PageID.318.) On June 22, 2018, ICE agents arrested Petitioner before a deportation officer released Petitioner on an order of supervision. (*Id*.; Order of Supervision, ECF No. 6-5.)

On January 14, 2026, ICE agents arrested Petitioner. (Pet., ECF No. 1-1, PageID.12.) On January 24, 2026, ICE revoked Petitioner's release on supervision after "ICE determined that it was appropriate to enforce the removal order and because ICE has the ability and means to effectuate the Petitioner's removal." (Resp., ECF No. 6, PageID.300; Notice of Revocation of Release, ECF No. 6-6.)

Shortly thereafter, Petitioner filed a § 2241 petition challenging his initial detention without a bond hearing in *Rosales-Carmenate v. Raycraft* (*Rosales-Carmenate I*), No. 1:26-cv-503 (W.D. Mich. filed Feb. 12, 2026). On February 19, an IJ granted Petitioner's motion to reopen Petitioner's removal proceedings (IJ Order, ECF No. 1-5, PageID.49), thereby vacating Petitioner's final order

2

of removal. *See Plasencia-Ayala v. Mukasey*, 516 F.3d 738, 745 (9th Cir. 2008), *overruled on other grounds by Marmolejo-Campos v. Holder*, 558 F.3d 903 (9th Cir. 2009).[2] On March 9, the Court conditionally granted Petitioner's petition and ordered Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the entry of the Court's judgment or, in the alternative, to immediately release Petitioner from custody. *Rosales-Carmenate I*, No. 1:26-cv-503 (W.D. Mich. Mar. 9, 2026).

On March 12, 2026, Petitioner received a bond hearing pursuant to § 1226(a). (Emergency Pet., ECF No. 1-1, PageID.12.) At the conclusion of the March 12, 2026, hearing, the IJ, in a written order, denied Petitioner's request for bond, concluding that Petitioner posed a danger to the community because of Petitioner's two recent arrests for assault. (Mar. 12, 2026, IJ Order, ECF No. 1-4, PageID.46.) Petitioner remains in ICE custody. (Emergency Pet., ECF No. 1-1, PageID.20.)

On April 30, 2026, upon DHS's motion to reconsider, an IJ with the Detroit Immigration Court granted the motion to reconsider and denied Petitioner's motion to rescind the removal order entered *in absentia* and to reopen removal proceedings (IJ Order on Motion to Reconsider, ECF No. 1-6, PageID.52–58), thereby making it as though the earlier decision vacating the 2013 final order of removal had never been entered. *See Mu Ju Li v. Mukasey*, 515 F.3d 575, 578 (6th Cir. 2008) (explaining that granting a motion to reconsider has the effect of "placing [the case] back in time" as though the earlier decision had never been entered).

---

[2] "Several courts of appeals, including ours, have held that a grant of a motion to reopen vacates the final order of deportation." *Plasencia-Ayala*, 516 F.3d at 745.

### III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV.    Merits Discussion

Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. (Reply, ECF No. 6, PageID.48–49.) In response, Respondents argue that Petitioner's continued detention under 8 U.S.C. § 1231(a) remains lawful and does not implicate the constitutional concerns identified in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). (*See* Resp., ECF No. 4, PageID.20–21.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). For the purposes of 8 U.S.C. § 1231(a), a removal order "shall become final upon the earlier of (i) a determination by the Board of Immigration Appeals (BIA) affirming such an order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of removal became final in 2013. The 90-day removal period following the order expired well before Petitioner filed the present action.

4

*See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that following the removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled a total of six months in detention. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[3] "[O]nce [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

After the 90-day removal period has expired, a noncitizen may continue to be detained. *See* 8 U.S.C. § 1231(a)(6). The Supreme Court has held that after expiration of the 90-day removal period, the Government may continue to detain the noncitizen "for a presumptively reasonable period" of time, which the Supreme Court concluded equaled six months. *Zadvydas*, 533 U.S. at 701. After the six-month period, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*.

At the time that Petitioner filed his petition, Petitioner had been detained less than six months. "Although the Supreme Court established a six-month period of presumptively reasonable

---

[3] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

detention," courts have found that *Zadvydas* does "not preclude a detainee from challenging the reasonableness of his detention before such time." *See, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395–96 (D.N.J. 2025) (citing, *inter alia*, *Zadvydas*, 533 U.S. at 699–701; *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 706–07 (S.D. Tex. 2020); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018)); *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits." (citations omitted)). That is, during the six-month period of detention, "[t]he presumption of reasonableness is the default," and "the government bears no burden to justify detention," "but if a person 'can prove' that his removal is not reasonably foreseeable, then he can overcome that presumption." *Id.* at 397 (citations omitted).

In this case, Petitioner has not offered any evidence or argument to prove that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Accordingly, for each of the foregoing reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.[4]

### Conclusion

For the reasons discussed above, the Court will enter a judgment denying Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated: July 8, 2026                      /s/ Hala Y. Jarbou
                                          HALA Y. JARBOU
                                          CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Petitioner also argues that the IJ did not apply the constitutionally required burden of proof at Petitioner's March 12, 2026, § 1226(a) bond hearing. Based on the record before the Court at this time, there is no indication in the record that the IJ applied an unconstitutional burden of proof at the bond hearing. More importantly, any claim that Petitioner may have under § 1226 regarding his bond hearing is moot as Petitioner is not currently detained under § 1226.

6